IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RAUL VILLEGAS GARZA, | § | |
| PETITIONER, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:06-CV-0291-Y |
| | § | |
| NATHANIEL QUARTERMAN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, INSTITUTIONAL DIVISION, | § | |
| RESPONDENT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.     NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

B.     PARTIES

Petitioner Raul Villegas Garza is in the custody of the Texas Department of Criminal Justice, Institutional Division (TDCJ-ID),  TDCJ-ID #1242954, and is presently incarcerated in the Michael Unit in Tennessee Colony, Texas.

Respondent Quarterman is the Director of the Texas Department of Criminal Justice, Institutional Division.

C.      PROCEDURAL HISTORY

On June 9, 2004, Garza was convicted in Cause No. 9232 in the 355th Judicial District Court, Hood County, Texas, of four counts of indecency with a child by contact. (Clerk's R. 40). A jury assessed a punishment of twenty years' confinement on each count. (Clerk's R. 41). Garza's conviction and sentence were affirmed on direct appeal to the Texas Court of Appeals, and the Texas Court of Criminal Appeals refused Garza's petition for discretionary review. *Garza v. State*, No. 1200-05 (Tex. Crim. App. Oct. 19, 2005); *Garza v. State*, No. 2-04-279-CR (Tex. App.–Fort Worth June 9, 2005, pet. ref'd)(mem. op., not designated for publication). Garza has filed one state habeas application, which was denied by the Texas Court of Criminal Appeals without written order on March 1, 2006. *Ex parte Garza*, Application No. 63,980-01 at cover (Tex. Crim. App. Mar. 1, 2006). Garza filed a Petition for Writ of Habeas Corpus By a Person in State Custody in the United States District Court for the Northern District of Texas, Fort Worth Division, on April 19, 2006.[1]

D.      ISSUES

Garza alleges the following grounds for relief:

1.      He was denied the effective assistance of counsel because

    a.      defense counsel impeached his own client;
    b.      defense counsel advised Garza to lie on the stand;
    c.      defense counsel had a conflict of interest because he was representing state witness Kristie Garza in her divorce action against Garza;
    d.      defense counsel failed to conduct an independent investigation of the case;
    e.      defense counsel did not subpoena material defense witnesses;
    f.      defense counsel's cross-examination of state witness Kristie Garza was deficient;

---

[1] *See Spotville v. Cain*, 149 F.3d 374, 375 (5th Cir. 1998).

      g.     defense counsel failed to have the trial judge removed from the case and called as a rebuttal witness; and

      h.     defense counsel failed to have the prosecutor removed due to his conflict of interest and vindictive prosecution of Garza;

2.     His conviction violates principles of double jeopardy;

3.     There is no or insufficient evidence to support his conviction;

4.     The indictment was invalid or defective; and

5.     The prosecution engaged in misconduct by

      a.     failing to disclose favorable evidence;
      b.     coaching witnesses;
      c.     vindictively prosecuting Garza; and
      d.     conducting an inadequate investigation before indictment.

## E.     RULE 5 STATEMENT

Respondent asserts that Petitioner has failed to adequately exhaust Grounds 1(e), (g), and (h); (3); and (5)(b)-(d). Respondent contends that permitting Petitioner to return to state court to exhaust his remedies would be futile under procedural default rules.

## F.     LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

The standards codified in 28 U.S.C. § 2254 guide our review of a petition for writ of habeas corpus filed by a state prisoner:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481

(1997).   Relief is authorized if a state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct.

1495, 1523, 1518, 146 L.Ed.2d 389 (2000).  Relief is also available if the state court identifies the

correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or

reaches a decision based on an unreasonable factual determination.  *See* 28 U.S.C. §2254(d)(1)-(2);

*Montoya v. Johnson*,  226 F.3d 399, 404 (5th Cir. 2000).  Mere disagreement with the state court is

not enough:  The standard is one of objective reasonableness.  *Montoya*, 226 F.3d at 404.   In

addition, state court determinations of underlying factual issues are presumed correct, and the

petitioner has the burden to rebut the presumption with clear and convincing evidence.  28 U.S.C.

§2254(e)(1).

G.     STATEMENT OF FACTS

     The state appellate court summarized the evidence presented at Garza's trial:

     In December 2002, appellant married Kristie Garza, who had five children from a
     previous marriage. Initially, Kristie and her children lived with appellant in his
     two-bedroom apartment in Granbury, Texas. In the summer of 2003, the family
     moved into a three-bedroom home. Appellant underwent knee surgery on July 8,
     2003 and as a result was unable to work at his job as a mechanic. Appellant spent
     several weeks at home recuperating.

     According to S.R.A., Kristie's oldest daughter, once during that summer, appellant
     called her into his bedroom and told her to lie on the bed with him. After S.R.A. did
     as she was told, appellant placed his hand under S.R.A.'s nightie and rubbed her
     breasts. On other occasions, appellant touched S.R.A's "private," the side of her
     breast, and her pubic hair. In another incident, appellant placed S.R.A.'s hand on his
     penis and tried to kiss her. S.R.A. testified that appellant once asked her to be his
     mistress and told her they could go to Fort Worth and rent a motel and tell everyone
     they were going bowling. Kristie's middle daughter, J.M.S., also testified that
     appellant called her into his bedroom and had her lie down on the bed with him.

Appellant then rubbed J.M.S.'s breast with one hand and rubbed and squeezed her "butt" with his other hand. According to J.M.S., appellant pulled her close and kissed her while rocking back and forth. On another occasion, appellant placed his hand between J.M.S.'s legs and "went back and forth." Appellant told J.M.S. that she could have sex with him when she turned eighteen because it is not illegal for a stepfather and stepdaughter to have sex.

Neither girl immediately told anyone what had happened. Kristie did not find out about the abuse until she overheard a telephone conversation between appellant and S.R.A. in which S.R.A. confronted appellant about his touching J.M.S. Both girls then told Kristie what appellant had done to them. Although appellant later admitted to Kristie that he had touched both girls, Kristie did not immediately report the abuse to authorities. In fact, she did so only after her sister found out about the abuse and encouraged her to call the police. Appellant was charged with two counts of indecency with a child for touching S.R.A. and two counts of indecency with a child for touching J.M.S. See Tex. Penal Code Ann. § 21.11 (Vernon 2003).

At trial, S.R.A., J.M.S. and Kristie testified for the State. Appellant testified and denied touching S.R.A. and J.M.S. He also denied that he admitted to Kristie that he had touched the girls. He testified that he was born without testicles and was not interested in or capable of having sex. Appellant testified that he and Kristie took the children to visit their grandparents in Tennessee on July 3, 2003, five days before he had his knee surgery. The children stayed with their grandparents in Tennessee until August 8, 2003. Appellant testified that he started working as a teacher at a Fort Worth school on August 11, 2003, leaving only a narrow window of time in which he could have touched the girls.

Appellant testified that the girls falsely reported that he had abused them because he had disciplined them for getting bad grades in school. S.R.A. testified that she had been mad at appellant for disciplining her. Appellant testified that S.R.A. would get upset when he showed favoritism toward Kristie's youngest daughter. Appellant testified that even after Kristie learned of the allegations of abuse, she allowed him to take her daughters on trips to Fort Worth.

Contrary to appellant's testimony, Kristie testified that not only was appellant able to have sex but that she was not able to keep up with him sexually. Similarly, appellant's ex-wife, Priscilla Kendall, testified that appellant was able to have sex and described his sexual appetite as "excessive." In addition, Hood County Investigator Gay Johnson testified that appellant had told her that he and Kristie had "wild sex."

Kendall's daughter, F.O., testified that when appellant was married to her mother, appellant would squeeze F.O.'s "butt," kiss her, and stick his tongue in her mouth. Moreover, appellant's niece, R.Y., testified that she and her mother, Rachel Guerra,

5

had previously lived with appellant in Hood County. R.Y. testified that on several occasions appellant would touch her breasts and her crotch. R.Y., who is now married with a child, testified that she told Guerra that if she did not support her claims against appellant, R.Y. would not let Guerra see her granddaughter. Guerra testified that appellant admitted to her that he had touched R.Y.

*Garza v. State*, No. 2-04-279-CR, slip op. at 1-5.

H.    DISCUSSION

1.    Ineffective Assistance of Counsel

Garza contends that his defense attorney, Andrew Ottoway, rendered constitutionally ineffective assistance at trial. The two-pronged standard by which a claim of ineffective assistance of counsel is measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient. *Id*. at 698, 104 S.Ct. at 2064, 80 L.Ed.2d 674. The defendant must show that counsel's performance was deficient in that the errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d 674. The second prong requires the defendant to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. at 2068, 80 L.Ed. 2d 674. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d 674. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id*. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d 674. In addition, claims of ineffective assistance are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d 674. Therefore, the federal

court cannot grant habeas relief unless the state court's rejection of the claims involved an unreasonable application of the law to the facts.  28 U.S.C. § 2254(d)(1).

      a.      Impeachment

Garza complains that Ottoway impeached his own client.  After Garza testified, the prosecution announced its intention to call several witnesses to counter Garza's testimony that he was unable to have sex and had no interest in sex.  (3 Rep. R. 160, 179-81, 193-94).  The trial court held a hearing outside the presence of the jury, during which Ottoway argued about the proper way in which to impeach a witness with extraneous acts.  (3 Rep. R. 195).  There is no showing that Ottoway's argument outside the jury's presence constituted impeachment of his client.

Garza also complains that Ottoway should have objected to R.Y.'s testimony because he had been "acquitted" or exonerated of sexually abusing R.Y.; however, he provides no proof that this is true.  Garza has submitted a copy of a letter he received from the Texas Department of Protective and Regulatory Services dated September 17, 1998 that states that the Department's investigation of R.Y.'s complaint was being closed as "unable to determine," but this document was not admitted at trial or included in the state habeas record.  (*See* Def. Mot. to Amend, 5/5/06, Ex. X).  The Fifth Circuit has found that evidence not presented to the state courts should be barred from consideration in the federal courts absent cause and prejudice for the default.  *See Woods v. Johnson*, 75 F.3d 1017, 1029 n.16 (5th Cir. 1996).  Garza neither alleges nor demonstrates cause and prejudice. Moreover, the letter does not purport to be an exoneration of the charge, but only a determination that no further administrative action would be taken.   Garza has not demonstrated that Ottoway impeached his own client's credibility or was ineffective in not objecting to or challenging R.Y.'s testimony on the basis of a previous "acquittal."

### b.      Suborning Perjury

Garza also contends that Ottoway advised him to withhold information on the stand and testify that he and his wife had gone for a drive after his stepdaughters accused him of molesting them when the truth was that he and his wife had gone to a business that administered polygraph tests.  Garza asserts that he passed the polygraph examination and should have been allowed to testify about this fact.  He notes that Kristie Garza had submitted an affidavit to the grand jury in which she alleged, falsely, that he had failed the examination.  At trial, Kristie Garza testified that she went for a drive with Garza after her children confronted Garza.  She did not mention the polygraph examination.  (3 Rep. R. 24).

Measured against the first prong of *Strickland*, Ottoway's advice to Garza does not appear to be deficient.  The Texas Court of Criminal Appeals adheres to the rule that the existence and results of a polygraph examination are inadmissible for all purposes in state criminal proceedings. *Tennard v. State*,  802 S.W.2d 678, 683 (Tex. Crim. App. 1990).  In addition, Garza's testimony that he went for a drive does not appear to be a false statement of the facts, although he did not testify that he drove to any particular destination.  Moreover, Garza demonstrates no prejudice as he provides no evidence that he took and passed a polygraph examination.  The state court's rejection of Garza's complaint that counsel advised him to perjure himself has not been shown to be an unreasonable determination of the facts or contrary to law.

### c.      Conflict of Interest

Garza also contends that his defense counsel was laboring under a conflict of interest because counsel was also representing Kristie Garza in her divorce proceedings against Garza.  Garza provides no persuasive proof that this allegation is true.   Garza relies on an excerpt from Kristie

Garza's testimony in which she stated that she was not yet divorced from Garza, but had initiated divorce proceedings:

> I had all the paperwork together in Michigan that we needed to continue with that, but somehow it – missed the mail.   And so – but Mr. Ottoway said that we had started that, and I faxed things to Mr. Ottoway to get that – help that get going.

(4 Rep. R. 53).  Although Garza contends that this testimony suggests Ottoway was Kristie Garza's attorney, Respondent asserts that another reasonable interpretation is that Kristie Garza was sending documents to Ottoway in his role as Garza's counsel.   Garza has provided no other evidence to support his claim that Ottoway was representing conflicting interests, and is not entitled to federal habeas relief on this ground.

      d.     Independent Investigation, and
      e.     Subpoenaing Witnesses

Garza asserts that defense counsel did not conduct an adequate investigation of the case and failed to subpoena approximately two dozen witnesses with material information.  Counsel has a duty to make reasonable investigations or make a reasonable decision that makes a particular investigation unnecessary, *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, but conclusory allegations do not suffice to establish a Sixth Amendment violation.  *Alexander v. McCotter*, 775 F.2d 595, 602-03 (5th Cir. 1985).  The petitioner must specify what the investigation would have revealed, what evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir.1994); *Nelson v. Hargett,* 989 F.2d 847, 850 (5th Cir.1993).

As an initial matter, Respondent notes that Garza lists more individuals in his federal habeas petition than the list of uncalled witnesses he provided in his state habeas application.  In his state habeas application, Garza had asserted that the following witnesses should have been interviewed

and subpoenaed: his surgical recovery nurse, his physical therapist, a urology specialist, Valerie

Jones, the owner of Southwest Polygraph, Terri Dawn, Robbie Reed, Dan Griffin, the Child

Protective Services (CPS) investigators of R.Y.'s case in 1998, the Lipan I.S.D. school principal,

the driver of the children's school bus, and character witnesses George Smith, Maurice Walton, and

Steve Reed.  In his federal petition, Garza names all of the foregoing individuals, but also names his

father, Ruth Gomez, Ruben Estada, Mrs. D. Land, Domingo Guerra, Rachel Guerra, and the state

district judge who presided over the trial.

Respondent asserts that Garza's complaints with respect to any newly identified witnesses

are subject to a procedural bar.  A petition for writ of habeas corpus shall not be granted unless the

applicant exhausted his state court remedies.  28 U.S.C. § 2254(b), (c).  A claim must be presented

to the state's highest court to satisfy the exhaustion requirement.  *Richardson v. Procunier*, 762 F.2d

429, 430 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  The exhaustion

requirement is not met if a petitioner presents new legal theories or new factual claims in his federal

application. *Whitehead v. Johnson*, 157 F.3d 384,387 (5th Cir. 1998).

Remand to satisfy the exhaustion requirement, however, would serve no purpose in this case.

The general rule that a state court must explicitly apply a procedural bar to preclude federal review

is not applicable to cases in which the petitioner failed to exhaust his state court remedies and the

state court to which he would be required to present his unexhausted claims would now find those

claims procedurally barred.  *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115

L.Ed. 2d 640 (1991).  In such cases, there is a procedural default precluding federal habeas review.

*Id.*  The Texas Court of Criminal Appeals applies the abuse-of-the-writ doctrine regularly and

strictly, and the doctrine is an adequate state procedural bar for purposes of federal habeas review.

10

*Emery v. Johnson,* 139 F.3d 191, 195 (5th Cir.1997); *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir.1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.1995).

A habeas petitioner can overcome a procedural default by demonstrating independent objective cause for the failure to properly raise the claims and actual prejudice resulting therefrom. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Cause under the "cause and prejudice" standard must be an objective factor, external to the petitioner, that cannot be fairly attributed to him. *Coleman,* 501 U.S. at 753, 111 S.Ct. at 2566; *Meanes v. Johnson,* 138 F.3d 1007, 1011 (5th Cir.1999). The procedural bar may also be avoided if a petitioner can establish that a fundamental miscarriage of justice would result from application of the bar; however, this requires a statement and persuasive showing that he is actually innocent. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Garza alleges neither cause nor prejudice to excuse the procedural bar and allow judicial review with respect to the newly identified witnesses, nor does he make a persuasive showing of his actual innocence.[2]

With respect to the exhausted portion of his claim of uncalled witnesses, Garza groups his alleged witnesses as alibi witnesses, character witnesses, credibility witnesses, and rebuttal witnesses, but he has not established that Ottoway's failure to call any of these witnesses to testify undermines confidence in his conviction. Complaints of uncalled witnesses are not favored on habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative. *See Boyd v.*

---

[2] Garza has provided one affidavit, a joint affidavit from Domingo and Rachel Guerra, which he did not provide to the state court during the state habeas proceedings. The Fifth Circuit has determined that evidence not presented to the state courts should be barred from consideration in the federal courts absent cause and prejudice for the default. *Woods v. Johnson*, 75 F.3d 1017, 1029 n.16 (5th Cir. 1996). Garza neither alleges nor demonstrates cause to excuse his failure to present the Guerras' affidavit earlier. He also fails to demonstrate prejudice. The Guerras affirmed that no children were at the house during the time that Garza was recuperating from knee surgery. However, even Garza conceded at trial that there was a narrow window of time during which the alleged contact could have occurred. (3 Rep. R. 169). *See also Garza v. State*, No. 2-04-279-CR, slip op. at 3.

*Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.

1978).  To prevail on such a claim, a petitioner must show that the witness's testimony would have

been favorable and that the witness would have testified.  *See Alexander v. McCotter*, 775 F.2d 595,

602 (5th Cir. 1985).

Except for one affidavit, from friend Dan Griffin, Garza provides only  his own summary

of what he alleges each witness would have said and has not demonstrated that any of the uncalled

witnesses were available to testify at trial and/or would have provided testimony sufficient to

undermine the reliability of his conviction.  As for Griffin's affidavit, Griffin attended church with

the Garza family and attested that Kristie Garza contacted the Griffins on two or three occasions to

ask for advice about problems with her marriage to Garza, and she had also allowed to Griffins to

babysit her children while she talked with her husband about their marital problems.  (State Habeas

R. at 98).  Garza asserts that this affidavit undermines the credibility of his wife's testimony that she

had no one to turn to in Hood County for help after learning that her children had been abused, but

there is no indication that Ottoway had failed to interview Griffin about his relationship with the

Garzas or that Ottoway's decision not to call Griffin as a defense witness was anything but

reasonable trial strategy.  Kristie Garza was asked at trial if she thought she could tell the Griffins

about the sexual abuse allegations, and she responded that she did not believe she could tell the

Griffins because of their longstanding relationship with her husband's family.  (3 Rep. R. 35).

Griffin's affidavit does not contradict Kristie Garza's testimony that she felt unable to turn to Griffin

for help with regard to the sexual abuse allegations despite having asked for Griffin's assistance with

respect to other problems in her marriage.  Moreover, nothing in Griffin's affidavit impeaches the

testimony that Kristie Garza or the complainants offered about the details of the sexual abuse.  The

state court's implicit determination that counsel was not constitutionally ineffective in not calling Griffin as a witness to contradict Kristie Garza's testimony on this particular issue is neither an unreasonable determination of the facts or contrary to the law.

Garza also complains of Ottoway's failure to subpoena a medical specialist to confirm that Garza is unable to maintain an erection and has a small penis due to a congenital abnormality. During trial, Ottoway called Garza's treating physician, David Kuban, as a witness. Kuban testified that Garza required testosterone injections on a monthly basis for his condition; however, Kuban was unable to confirm whether Garza could or could not maintain an eretion. (4 Rep. R. 5-6). Even if Ottoway should have obtained additional testimony from a medical expert, it does not undermine Garza's conviction for indecency by contact.[3] Garza's wife and ex-wife testified that he has sexual desires and is able to have sexual intercourse, his stepdaughters described how he fondled them, and two additional witnesses testified that Garza had also molested them.

Garza has failed to overcome the presumption that Ottoway's actions in calling or not calling certain witnesses were a matter of reasonable trial strategy. Garza has similarly failed to demonstrate prejudice as a result of Ottoway's allegedly inadequate investigation and his failure to call the witnesses that Garza wanted to testify at trial. The state court's rejection of his claim has not been shown to be unreasonable or contrary to the applicable law.

---

[3] There is no allegation that he had intercourse with either child, although he made suggestive remarks to them.

f.    State Witness Kristie Garza

Garza complains that defense counsel's cross-examination of Kristie Garza was deficient because counsel failed to ask her a number of important questions that would have undermined the credibility of her testimony.  Garza asserts that Ottoway should have questioned Kristie Garza about her familiarity with the investigation of child sexual abuse claims because one of her sons had been the victim of sexual abuse in Michigan.  He contends that she was feigning helplessness to excuse her failure to leave Garza or seek help for several months after learning that he had abused her daughters.  Garza also contends that his wife's credibility should have been challenged because she allowed her children to stay with Garza without supervision even after her daughters told her what he had done, and he wanted Kristie Garza to admit that her daughters had a motive in accusing their stepfather because they wanted to move back to Michigan.

Although Garza proposes a number of questions that he wanted counsel to ask, he provides no evidence of what Kristie Garza's responses would have been.  Moreover, he does not demonstrate that favorable answers to any of these questions undermines his conviction in light of the other evidence presented at trial.  He fails to demonstrate that the state court acted unreasonably or contrary to law in rejecting his claim that counsel's cross-examination of Kristie Garza was constitutionally ineffective.

g.    Trial Judge

Garza asserts that defense counsel should have taken steps to have the trial judge, Ralph Walton, removed from presiding over the case because the trial judge had served as Garza's counsel in 1998 during the administrative investigation of R.Y.'s allegations of molestation.  Garza asserts that Walton should have been called as a witness to rebut R.Y.'s testimony.  Garza did not exhaust

this claim by raising it in state court, and he demonstrates neither cause and prejudice nor his actual innocence to excuse his default.

   h.  Vindictive Prosecution

  Garza contends that defense counsel should have taken steps to remove the prosecutor from the case because the prosecutor was on a vendetta against Garza because Garza had previously exposed a county funding scandal by reporting the matter to a local newspaper.  In his reply brief, Garza further complains of Ottoway's failure to object to the prosecution's closing argument when the prosecutor injected his personal opinions into the case by referring to Garza as a liar.  Garza did not exhaust these claims by raising them in state court, and does not demonstrate cause and prejudice or his actual innocence to excuse his default.

   2.  Double Jeopardy

  Garza contends that his conviction constitutes a violation of double jeopardy protections because the prosecutor was permitted to introduce evidence of R.Y.'s charge of sexual misconduct against Garza  even though Garza had been "acquitted" of the charge.  He complains that the prosecution was allowed to "retry" Garza for this previous act of misconduct in violation of the Double Jeopardy Clause, which protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense.  *See Monge v. California*, 524 U.S. 721, 727-728, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998).  *See generally* U.S. Const. amend. V.

  Garza has not submitted any evidence that he was previously tried and acquitted of molesting R.Y.  He was the target of an investigation by the Texas Department of Protective and Regulatory Services, which decided to take no further action on R.Y.'s abuse allegations.  The Department's

decision to close its investigation is not the equivalent of an acquittal in a criminal prosecution. Moreover, Garza was not being prosecuted or punished for molesting R.Y., but for molesting his stepdaughters. The jury was instructed to consider the extraneous offenses only if proved beyond reasonable doubt and only for purposes of determining Garza's intent with respect to the current charges against him.  (Clerk's R. 35).  Garza's claim of a double jeopardy violation is meritless.

Alternatively, Garza argues that the trial court erred in admitting the extraneous offense and that the evidence should have been excluded under Texas Rule of Evidence 404(b).  A state court's evidentiary rulings present cognizable habeas corpus claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair.  *Brown v. Dretke*, 419 F.3d 365, 377 (5th Cir. 2006), *cert. denied*, 126 S.Ct. 1434 (2006); *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). The established standard for fundamental fairness requires that habeas relief be granted by a federal court only when the state trial error relates to evidence that is material in the sense of a crucial, critical, highly significant factor. *Mullen v. Blackburn*, 808 F.2d 1143, 1145 (5th Cir. 1987).

Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith; however, the evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  TEX. R. EVID. 404(b).  Here, the trial court determined that Garza's testimony in which he denied having any sexual desire had opened the door to the extraneous offense evidence,  (3 Rep. R. 160, 179-81),  and after conducting a balancing test, the trial court admitted the evidence.  (3 Rep. R. 214). Under these

16

circumstances, Garza fails to demonstrate that the admission of the extraneous offense testimony rendered his trial fundamentally unfair.

3.      Sufficiency of the Evidence

Garza contends that the evidence is insufficient to support his conviction.  On direct appeal, Garza challenged the factual sufficiency of the evidence, and in his state habeas application, he challenged both the legal and factual sufficiency of the evidence.

Texas law allows for a review of both the legal and factual sufficiency of the evidence underlying a conviction, while the federal courts review only for legal sufficiency of the evidence under the standard outlined by the United States Supreme Court in *Jackson v. Virginia*.  *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Compare West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1986)(noting that challenged state conviction is reviewed only to ensure *Jackson* standard is satisfied, even if state law would impose higher burden) *with Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) (distinguishing proper standard of review for factual sufficiency from legal sufficiency standard set out in *Jackson*).  To the extent Garza contests the factual sufficiency of the evidence as governed by state law, he states no cognizable basis for federal habeas relief.

Moreover, Respondent asserts that Garza has procedurally defaulted any claim that the evidence is legally insufficient by not raising his complaint in the state courts until he applied for state habeas relief.  Texas state procedural rules require insufficiency claims to be raised on direct appeal, and such claims may not be brought in a state application for writ of habeas corpus.  *Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994); *Clark v. Texas,* 788 F.2d 309, 310 (5th Cir. 1986).  The Texas Court of Criminal Appeals has confirmed that when a state habeas applicant challenges the sufficiency of the evidence in a state habeas application, and it subsequently disposes of the

application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). In these circumstances, reliance on the procedural default by the state court is established and presents an adequate state procedural ground barring federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-07, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Even if this claim were not barred, it is without merit. Assessing the legal sufficiency of the evidence requires the court the decide whether, when the evidence is viewed in the light most favorable to the verdict, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d 560 (1979). The Texas Court of Appeals found that the evidence met the lower standard for factual sufficiency of the evidence, and this court likewise finds that there is legally sufficient evidence from which a rational trier of fact could find Garza guilty beyond reasonable doubt of the essential elements of the offense of indecency with a child by contact.[4]

---

[4] The state statute defining the elements of indecency with a child provides:

(a) A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:
    (1) engages in sexual contact with the child or causes the child to engage in sexual contact;
. . . .
(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
    (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
    (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

Tex. Penal Code Ann. § 21.11(a), (c) (Vernon 2003).

4.      Defective Indictment

Garza asserts that the indictment was defective and invalid.  In developing this point, however, Garza appears to be restating his complaints about the sufficiency of the evidence, which have been addressed and rejected *supra*.  In addition, the sufficiency of a state indictment is appropriate for federal habeas relief only when the indictment is so deficient that the convicting court was without jurisdiction.  *Riley v. Cockrell*, 339 F.3d 308, 313-314 (5th Cir. 2003); *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994).  Garza fails to make this showing or otherwise demonstrate that the state court's rejection of his claim was unreasonable or contrary to the law.

5.      Prosecutor Misconduct

Garza raises several complaints about the prosecutor's conduct both before and during trial.  The standard for reviewing prosecutorial misconduct in a habeas corpus case is whether the prosecutor's actions are of such a nature as to render the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *See Darden v. Wainwright*, 477 U.S. 168, 180-81, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000).

a.      Favorable Evidence

Garza contends that the prosecutor failed to disclose evidence favorable to the defense, including the videotape of an interview between Garza and the prosecutor's investigator; the reports prepared by the prosecution's investigator; the results of Garza's polygraph test; the reports and results of the previous CPS investigation into R.Y.'s allegations of abuse; and evidence that Garza's step-children were visiting relatives and were not at home while Garza was recuperating from surgery.

The prosecution's suppression of evidence favorable to an accused violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). To state a *Brady* claim warranting habeas relief, the defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to guilt or punishment, and (4) the defendant's late discovery of the allegedly favorable evidence was not the result of a lack of due diligence. *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). Evidence is material if a reasonable probability exists that had the evidence been disclosed to the defense, the result of the proceedings would have been different. *Blackmon v. Scott*, 22 F.3d 560, 564 (5th Cir. 1994). The defendant must show that the withheld evidence could reasonably be taken to put the case in a different light so as to undermine confidence in the verdict. *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998).

Garza fails to demonstrate that any evidence favorable to his case and not otherwise readily available to the defense either existed or was suppressed. His unsupported allegations about the favorable nature of his interview with the prosecution's investigator, his polygraph results, and the investigation into R.Y.'s abuse claims cannot substantiate a *Brady* violation. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000)(noting that allegations that are conclusory or purely speculative cannot support *Brady* claim). Moreover, Garza would have first-hand knowledge of both the polygraph results and the absence of the children from the house during his recovery from surgery. Garza has not demonstrated the existence of a *Brady* violation that undermines confidence in the jury's verdict.

### b.  Coaching Witnesses

Garza asserts that the prosecution coached both Kristie Garza and R.Y. on what to say during their testimony.  Garza admits that he did not include these coaching allegations in his state court appeal or state application for habeas relief, but contends that his default is excused because he was under time pressures that prevented him from discovering this claim earlier.

Cause sufficient to excuse a procedural bar is defined as something external to the petitioner and that cannot fairly be attributed to him that impedes his efforts to comply with the procedural rule. *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546;  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A pro se petitioner's ignorance of the legal significance of certain facts, however, does not constitute cause because ignorance is not an objective, external factor preventing him from raising the claim(s) in a prior petition.  *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992); *Rose v. Johnson*,  141 F.Supp.2d 661, 699 (S.D.Tex. 2001).  Garza further fails to demonstrate prejudice by showing that the proceedings would have been different but for the alleged error, nor has he shown that a failure to review his complaint would result in a miscarriage of justice. The court is procedurally barred from reviewing Garza's complaint.

### c.  Vindictive Prosecution

Garza asserts that the prosecutor pursued this case for malicious and vindictive purposes. Garza did not exhaust this claim by raising it in state court, and he demonstrates neither cause and prejudice nor his actual innocence to excuse his default.

### d.  Investigation and Grand Jury Proceedings

Garza complains that the prosecutor conducted an inadequate pre-indictment investigation and presented inaccurate, incomplete, or false information to the grand jury in support of an

indictment.  Respondent contends that Garza did not exhaust this claim by raising it in state court, but a liberal reading of Garza's state application indicates that he did complain throughout his petition about the prosecution's pre-indictment investigation and the alleged presentation of false or perjured testimony during the grand jury proceedings.  Nonetheless, Garza has not demonstrated that the state court acted unreasonably under the facts or contrary to the law in rejecting his claims.

Federal law does not impose a duty on the prosecution to present exculpatory evidence to a grand jury.  *United States v. Williams*, 504 U.S. 36, 52, 112 S.Ct. 1735, 1744-45 (1992).  And Garza's conclusory allegations do not establish that the prosecutor submitted any false or perjured testimony to the grand jury in obtaining the indictment.  Moreover, a  jury found Garza guilty beyond reasonable doubt, and Garza fails to demonstrate that his trial or the jury's verdict was tainted by the prosecutor's alleged pre-trial misconduct or careless investigation. *Cf. United States v. Mechanik*, 475 U.S. 66,  106 S.Ct. 938, 89 L.Ed.2d 50 (1986)(finding that error in grand jury proceeding rendered harmless after petit jury returned guilty verdict, which confirmed existence of probable cause to indict).  Habeas relief is not warranted.

<u>RECOMMENDATION</u>

The petition for writ of habeas corpus should be denied.

<u>NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is hereby extending the deadline within which to

file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until May 31, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until May 31, 2007 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MAY 10, 2007.


    /s/    Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

23